UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| YAMAMOTO MITCHELL and WALTER MITCHELL, § § § | |
| Plaintiffs, § § | |
| v. § | CIVIL ACTION NO. H-04-2444 |
| § | |
| METCO, INC., MEMHET HAZIRLAR, and J. RICHARD PECK, § § § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants Metco, Inc.'s and Memhet Hazirlar's Motion for Summary Judgment (Doc. #33). For the reasons set forth below, Defendants' motion is **GRANTED IN PART and DENIED IN PART**.

### I. BACKGROUND

Plaintiffs Yamamoto Mitchell and Walter Mitchell were crew members aboard the M/V GLORITA ("the *Glorita*").[1] Defendants J. Richard Peck,[2] Memhet Hazirlar, and Metco, Inc., a company owned by Mr. Hazirlar, were all owners of the *Glorita* at various times relevant to this dispute.

On July 22, 2003, while the *Glorita* was at sea, it was arrested at the order of the Trinidad and Tobago High Court of Justice for failure to pay the crew's wages.[3] While the *Glorita* was

---

[1] Yamamoto Mitchell claims he was aboard the *Glorita* from January 31, 2003, through August 14, 2003, for a total of 197 days. Walter Mitchell claims he was aboard the ship for an estimated 80 days within that same time period.
[2] Defendant J. Richard Peck has not appeared in this action.
[3] *The Officers and Crew on Board the Motor Tug "Glorita" & The Former Master and Crew of the Motor Tug "Glorita" v. The Owner and/or Parties Interested in Motor Tug "Glorita,"* Action No. A-2 of 2003 (Trinidad & Tobago High Court of Justice).

under arrest in Trinidad, a settlement of the outstanding wages was attempted, and Yamamoto Mitchell entered into a contract to assign his claim for wages to a third party.

Yamamoto Mitchell and Walter Mitchell claim that, to date, they still have not received payment for the wages they are owed. They have filed suit against Metco, Inc. and Memhet Hazirlar for the wages they claim they are entitled to as a result of their service on board the *Glorita* prior to its arrest in Trinidad. They also seek to recover statutory penalty wages, as provided for by 46 U.S.C. § 10313(g). Defendants have moved for summary judgment.

## II. SUMMARY JUDGMENT STANDRARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

## III. FIVE ALLEGED GROUNDS FOR SUMMARY JUDGMENT

Defendants assert five grounds on which they are entitled to summary judgment. First, they argue that Yamamoto Mitchell lacks standing to bring a claim for unpaid wages because he assigned his claim to a third party. Second, Defendants claim that Memhet Hazirlar is not a

proper defendant in this action because, at all material times, he was not an owner of the *Glorita*. Third, Defendants dispute Plaintiffs' entitlement to a statutory wage penalty because the vessel was arrested before it could complete its voyage. Fourth, Defendants argue that Plaintiffs are not entitled to recover wages for the time period after the arrest of the *Glorita* in Trinidad. Finally, Defendants argue that the claims of both Yamamoto and Walter Mitchell should be dismissed on equitable grounds because they settled their claims in Trinidad. The Court will address each of Defendants' arguments in turn.

## A. Standing of Yamamoto Mitchell

Defendants contend that Yamamoto Mitchell does not have standing to bring an action for unpaid wages because he assigned his wage claim to a third party while he was in Trinidad. Defendants have provided a copy of the purported assignment (Def.'s Mot. Ex. F) as evidence supporting summary judgment in their favor on this issue.

The relevant issue at the summary judgment stage is whether seamen are legally entitled to assign their wage claims. Yamamoto Mitchell claims that assignment of wage claims in circumstances such as those present in this case should not be permitted on public policy grounds. However, the Court is of the opinion that, public policy notwithstanding, assignment of wage claims and maritime liens for wage claims is permitted by law.

Although there is a statute that expressly provides that an assignment of wages made before the wages are paid is not binding, that statute applies only to individuals employed on a fishing vessel or fish processing vessel. 46 U.S.C. § 11109(b)-(c) (2006). The parties agree that the *Glorita* was not engaged in the business of fishing or fish processing, so its crewmen are not governed by this statute. Furthermore, the limited application of this statute suggests that assignments made by crew members from any other type of vessel are valid and binding. In fact,

3

several other courts have permitted suits brought by assignees of seamen's wage claims or maritime liens for wage claims. *See, e.g.*, *Gailhead, Inc. et al. v. M/V Fratzis M.*, 1994 WL 251192, at *2 (S.D. Fla. Feb. 8, 1994); *Medina v. Marvirazon Compania Naviera, S.A.*, 533 F. Supp. 1279, 1287 (D. Mass. 1982) ("A seaman's wage lien is assignable."). Thus, a seaman is legally entitled to assign his claim for wages, and consequently Yamamoto Mitchell's assignment is binding.

However, Yamamoto Mitchell disputes the validity of his assignment because he claims that the terms of the assignment contract were not fulfilled. According to the contract, Yamamoto Mitchell assigned his claims in consideration for immediate payment of $3000, a return ticket from Trinidad to New Orleans, and an additional payment of $17,000 to be made by February 28th, 2004. However, Yamamoto Mitchell states in an affidavit that he was never paid the additional $17,000 that he was promised. Thus, Mr. Mitchell argues that because the "conditions" of the assignment were not fulfilled, "the claim for wages reverted to the plaintiff." (Pl.'s Opp. 3.)

This analysis, however, is incorrect. Nothing in the contract indicates that the assignment was contingent upon the fulfillment of any conditions; it evidences merely a bargained-for exchange of promises. Yamamoto Mitchell promised to assign his claim, and a third party promised to pay Mr. Mitchell. When, as here, two parties make promises constituting a contract, and one party breaches his promise, the traditional remedy for the non-breaching party is not rescission of the contract, but rather damages for breach of contract. Thus, if the third party did indeed fail to pay Yamamoto Mitchell the promised $17,000, Mr. Mitchell is not entitled to rescind the contract and reclaim what he assigned. On the contrary, his remedy is to bring an action against the third party for breach of contract. Thus, even when Yamamoto Mitchell's

4

evidence is viewed in the light most favorable to him, it does not raise an issue of material fact as to the validity of the assignment. Yamamoto Mitchell does not have standing to bring a claim for unpaid wages against Defendants because he has assigned his claim, and thus Defendants' motion for summary judgment on this ground is **GRANTED**.

### B. Hazirlar as a Proper Defendant

Defendants contend that Memhet Hazirlar is not a proper defendant in this action because, at all material times, he was not an owner of the *Glorita.* Defendants have provided a copy of the Coast Guard's abstract of title for the *Glorita* (Def.'s Mot. Ex. B), which shows several relevant entries. It appears that on January 16, 2003, GEO 3 Inc. transferred 100% ownership of the *Glorita* to James Peck and Memhet Hazirlar, who each received a 50% ownership share. Then, it appears that on January 29, 2003, Memhet Hazirlar transferred a 100% ownership interest in the ship to Metco, Inc. Finally, it appears that on March 12, 2003, Memhet Hazirlar conveyed a 50% interest in the vessel to Metco, Inc. and James Peck in equal parts. These entries are facially contradictory, as it would have been impossible for Mr. Hazirlar to convey 100% ownership of the vessel in January, and then subsequently convey 50% ownership of the vessel in March. Thus, questions of fact remain as to the ownership of the *Glorita* at the times relevant to this dispute. Defendants' motion for summary judgment on this ground is therefore **DENIED**.

### C. Plaintiffs' Entitlement to Statutory Penalty Wages

Defendants contend that Plaintiffs are not entitled to statutory penalty wages under the terms of the statute. 46 U.S.C. § 10313(f) provides that, "[a]t the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier."

Subsection (g) then says, "When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed." 46 U.S.C. § 10313(g) (2006). Defendant argues that Plaintiffs are not entitled to statutory penalty wages under this scheme because the *Glorita* was arrested before the completion of its voyage, so its voyage never "ended," as required by subsection (f).

However, Defendant's interpretation of the statute is incorrect. A voyage does not end only when it is completed. The Ninth Circuit has held that "[a] seaman's voyage ends when his commitment to work aboard the ship is terminated, either by completion of his contract or by premature discharge." *Su v. M/V Southern Aster*, 978 F.2d 462, 470 (9th Cir. 1992). Thus, Yamamoto and Walter Mitchell's voyages ended for purposes of the penalty wage statute when they fulfilled their contract or when they were prematurely discharged. Presumably, Plaintiffs were prematurely discharged after the *Glorita*'s arrest. However, the Court has not been presented with evidence regarding the circumstances of Plaintiffs' discharge, and therefore summary judgment on this ground must be **DENIED**.

### D. Scope of Plaintiffs' Claims

Defendants assert that Plaintiffs are not entitled to recover regular wages past July 22, 2003, when the *Glorita* was arrested in Trinidad.[4] Plaintiffs do not appear to address this claim in their response. However, Defendants have not pointed the Court to any legal authority holding that seamen are never entitled to recover wages after their vessel is arrested. In fact, in *Chung, Yong Il v. Overseas Nav. Co.*, the district court awarded seamen wages earned both before and after arrest of their ship. 774 F.2d 1043, 1048 (11th Cir. 1985). Thus, Defendants' motion for summary judgment on this ground is **DENIED**.

---

[4] In the initial disclosures, Yamamoto Mitchell claims wages from January 31, 2003, through August 14, 2003. Walter Mitchell claims wages for an estimated 80 days, the dates of which were not disclosed. (Def.'s Mot. Ex. A.)

**E. Equitable Principles**

Finally, Defendants contend that Plaintiffs settled their wage claims and released the *Glorita* from arrest in Trinidad, and thus "[u]nder equitable principles and the doctrines of laches, waiver, estoppel, accord and satisfaction, release, payment and collateral estoppel," they are not entitled to bring another action to pursue the same wage claims. (Def.'s Mot. 8.) Defendants' evidence that the claims were settled in Trinidad is the first page of a letter from a lawyer in Trinidad to Memhet Hazirlar. (Def.'s Mot. Ex. E.) The letter says, "The crew had consented to compromise their claims in the following amounts . . ." and contains a chart listing the names of the crewmen, their rank, their wages due as of July 22, 2003, and the "amount compromised." The remaining pages of the letter are missing, however, and no signatures appear on the page that is present.

The Court finds that this letter merely alludes to a settlement of claims, and is not sufficient on its own to establish that a settlement agreement was in fact executed. The letter could be a settlement proposal, or a recounting of a settlement that was never finalized. ("The crew *had* consented to compromise their claims . . ." (emphasis added).) An affidavit by Yamamoto Mitchell indicates that while the crew members of the *Glorita* had at one time agreed to some settlement figures, the settlement was never executed and neither he nor Walter Mitchell were ever paid. (Pl.'s Resp. Aff.) In construing the letter and affidavit in the light most favorable to Plaintiffs, the Court is persuaded that Plaintiffs have raised a question of fact as to whether or not they previously settled their wage claims in Trinidad. Thus, Defendants' motion for summary judgment on this ground is **DENIED**.

## IV. CONCLUSION

Defendants' motion for summary judgment on the ground that Yamamoto Mitchell does not have standing to bring a claim is **GRANTED**. All other grounds raised in the motion are **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** this 1st day of November, 2006.

*[signature]*

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT